UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARK E. BREWSTER, M.D.,<br><br>Defendant.<br>_____/ | No. 1:17-cr-0127<br><br>Hon. Paul L. Maloney<br>United States District Judge |

## PLEA AGREEMENT

This constitutes the plea agreement between Mark E. Brewster, M.D., and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1. <u>Plea to Information</u>. The Defendant gives up the right to Indictment by a grand jury and agrees to plead guilty to the Felony Information charging the Defendant with knowingly and intentionally acquiring or obtaining possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge in violation of Title 21, United States Code, Section 843(a)(3).

2. <u>Defendant Understands the Crime</u>. In order for the Defendant to be guilty of violating Title 21, United States Code, Section 843(a)(3), the following must be true:

   a. The defendant acquired or obtained possession of a controlled substance;

   b. The defendant utilized misrepresentation, fraud, forgery, deception, or subterfuge to acquire or obtain the controlled substance; and

   c. The defendant did so knowingly and intentionally.

The Defendant is pleading guilty because the Defendant is guilty of the charge described above.

3. <u>The Defendant Understands the Penalty</u>. The statutory maximum sentence that the Court can impose for a violation of Title 21, United States Code, Section 843(a)(3), is the following: 4 years' imprisonment; a 1-year period of supervised release; a fine of $250,000.00, or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100.00. The Defendant agrees to pay the special assessment at or before the time of sentencing unless the Defendant affirmatively demonstrates to the Court that he lacks the ability to pay.

4. <u>Discretionary Restitution (VWPA)</u>. The Defendant agrees to make full restitution for the losses caused by his activities. The parties currently believe that the applicable amount of restitution is $1,571.11 based on the amounts that Blue Cross Blue Shield of Michigan ("BCBSM") paid for (1) prescriptions that the Defendant issued to a BCBSM beneficiary, Nicole Aiello, between January 11, 2014 and February 21, 2015 ($1,193.26); and (2) false prescriptions that the Defendant issued to a BCBSM beneficiary, M.S., between July 8, 2015 and November 20, 2015 ($377.85). The parties recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing. The Defendant further agrees to make restitution at or before the time of sentencing.

5. <u>Suspension/Revocation of Professional License</u>. The Defendant understands that if he holds a professional license, the conviction in this case may result in the suspension or revocation of that license.

6. <u>Factual Basis of Guilt</u>. The Defendant and the U.S. Attorney's Office agree and

2

stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

> The Defendant is a physician licensed to practice medicine in the State of Michigan. Between at least 2010 and December 10, 2015, the Defendant engaged in a scheme to obtain controlled substances for himself by writing fraudulent prescriptions to a number of other people. These prescriptions were for methylphenidate hydrochloride (known by the pharmaceutical trade name of Ritalin), a Schedule II controlled substance, and zolpidem tartrate (known by the pharmaceutical trade name of Ambien), a Schedule IV controlled substance. Generally, the Defendant would write a prescription to a person who was not a patient in need of the prescription. At the Defendant's direction, that person would fill the prescription at a pharmacy and return the pills to the Defendant. On certain occasions, the Defendant chose people to fill the prescriptions who had prescription drug insurance coverage.
>
> Prescriptions written in the manner described above included the prescription charged in the Felony Information. On or about August 4, 2015, the Defendant was interviewed by an investigator from the Michigan Department of Licensing and Regulatory Affairs ("LARA") regarding prescriptions that the Defendant previously wrote to his girlfriend, N.A., outside the context of a physician-patient relationship. During that interview, the Defendant assured the LARA investigator that, going forward, there was "zero chance" that he would write another prescription for anyone other than his patients.
>
> The next day, August 5, 2015, the Defendant text-messaged his hair stylist, M.S., asking, in relevant part, "You feel like getting me my Rx this last time?!? I don't get my insurance card till next week now." M.S. agreed. The Defendant then wrote M.S. a prescription for Ritalin (20mg tablets, 90 count) on August 5, 2015, knowing that M.S. was not in need of a Ritalin prescription and intending that M.S. would return the pills to the Defendant. M.S. filled the prescription at a Rite Aid pharmacy in Kalkaska, Michigan on August 5, 2015 and returned the Ritalin pills to the Defendant that same day. BCBSM paid $96.00 for this false prescription.
>
> M.S. informed the Defendant, by text message, that pharmacy employees "acted all weird" when M.S. filled the prescription. The Defendant responded that he would "put an addendum on your note that we discussed it." On or about October 30, 2015, the Defendant added a false note to M.S.'s patient records at Kalkaska Memorial Health Center, noting "[M.S.] also uses methylphenidate 20 mg tabs 1 tab 3 times a day while at work. A renewal prescription was given as an aside as [M.S.] will be following up with [M.S.'s] primary in the near future." This information was false. The Defendant added this information to M.S.'s patient file to conceal his fraudulent prescription scheme in the event that the false prescription

3

charged in the Felony Information was ever called into question.

7. The Defendant Agrees.

    a. Exclusion from Participation. The Defendant understands that under Title 42, United States Code, Section 1320a-7, the conviction in this case may result in his mandatory exclusion from federal health care programs, as that term is defined in Title 42, United States Code, 1320a-7b(f), for a period of at least five years. The Defendant further understands that, in the alternative, the conviction in this case may render him subject to permissive exclusion from participation in any federal health care program under Title 42, United States Code, Section 1320a-7(b)(1), for a period of years to be determined by the U.S. Department of Health and Human Services, Office of Inspector General.

8. The United States Attorney's Office Agrees.

    a. Acceptance of Responsibility. The U.S. Attorney's Office agrees not to oppose the Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under § 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by the Defendant that is inconsistent with the criteria set forth in the Commentary to § 3E1.1. Should the Court grant a two-level reduction as provided herein, the Government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to § 3E1.1(b).

    b. Non-Prosecution Agreement. The U.S. Attorney's Office agrees, except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not to further prosecute the Defendant for additional violations of 21 U.S.C.

§ 843(a)(3) (acquiring or obtaining controlled substances by misrepresentation, fraud, forgery, deception, or subterfuge), violations of 21 U.S.C. § 841 (unlawful distribution of controlled substances), violations of 21 U.S.C. § 846 (conspiracies to violate the Controlled Substances Act), or violations of 18 U.S.C. §§ 1028A (aggravated identity theft), 1035 (false statements relating to health care benefit programs), 1347 (health care fraud), and 1349 (health care fraud conspiracy) arising out of the Defendant's scheme to write false prescriptions to third parties in order to obtain controlled substances for himself between January 1, 2006 and December 31, 2015. The U.S. Attorney's Office also agrees not to further prosecute the Defendant under 18 U.S.C. § 922 for illegally possessing a firearm that was discovered during a search executed in connection with this case. The Defendant understands that the U.S. Attorney's Office is free to prosecute the Defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.

9. <u>The Sentencing Guidelines.</u> The Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing the Defendant. The Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. The Defendant understands that the Defendant and the Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed. The Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum penalties described elsewhere in this

Agreement. The Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

10.  <u>There is No Agreement About the Final Sentencing Guidelines Range.</u>  The Defendant and the U.S. Attorney's Office have no agreement as to the applicable Sentencing Guidelines factors or the appropriate guideline range. Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments and departures.

11.  <u>Waiver of Constitutional Rights.</u>  By pleading guilty, the Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of the Defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, the Defendant would have had the following rights:

    a.  The right to the assistance of counsel, including, if the Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the Defendant.

    b.  The right to be presumed innocent and to have the burden of proof placed on the Government to prove the Defendant guilty beyond a reasonable doubt.

    c.  The right to confront and cross-examine witnesses against the Defendant.

    d.  The right, if the Defendant wished, to testify on the Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

    e.  The right not to be compelled to testify, and, if the Defendant chose not to testify or present evidence, to have that choice not be used against the Defendant.

   f. By pleading guilty, the Defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

 12. <u>Waiver of Other Rights.</u>

   a. <u>Waiver</u>. In exchange for the promises made by the Government in entering this plea agreement, the Defendant waives all rights to appeal or collaterally attack the Defendant's conviction, sentence, or any other matter relating to this prosecution, except as listed below.

   b. <u>Exceptions</u>. The Defendant may appeal or seek collateral relief to raise a claim, if otherwise permitted by law in such a proceeding, on the following grounds:

    1. the Defendant's sentence on any count of conviction exceeded the statutory maximum for that count;

    2. the Defendant's sentence was based on an unconstitutional factor, such as race, religion, national origin, or gender;

    3. the district court incorrectly determined the Sentencing Guidelines range, if the Defendant objected at sentencing on that basis;

    4. the Defendant's sentence is above the Sentencing Guidelines range as determined by the court at sentencing and is unreasonable;

    5. the guilty plea was involuntary or unknowing;

    6. an attorney who represented the Defendant during the course of this criminal case provided ineffective assistance of counsel.

If the defendant appeals or seeks collateral relief, the Defendant may not present any issue in the proceeding other than those described in this subparagraph.

      c.      FOIA Requests. The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

      d.      Hyde Waiver. The Defendant acknowledges, by his voluntary admission of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious, frivolous, or in bad faith, and he hereby disclaims and waives any right to make any claim for attorney fees.

13.      The Court is not a Party to this Agreement. The Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. The Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the Defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all his obligations under this agreement. The Defendant understands that no one—not the prosecutor, the Defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence the Defendant will receive, except that it will be within the statutory maximum.

14.      This Agreement is Limited to the Parties. This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority. This agreement applies only to crimes committed by the Defendant. This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

15. <u>Consequences of Breach</u>. If the Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which the Defendant would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed. In such an event, the Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. The Defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

16. <u>This is the Complete Agreement</u>. This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

ANDREW BYERLY BIRGE
Acting United States Attorney

___7-24-17___   _/s/ Adam B. Townshend_
Date              ADAM B. TOWNSHEND
                  RAYMOND E. BECKERING III
                  Assistant United States Attorneys

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

___7-20-2017___   _/s/ Mark E. Brewster_
Date               MARK E. BREWSTER, M.D.
                   Defendant

I am Mark E. Brewster's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

___7-20-2017___   _/s/ David A. Dodge_
Date               DAVID A. DODGE
                   Attorney for Defendant

10